Arthur J. Bouchard and Irene S. Bouchard v. Commissioner.
Bouchard v. Commissioner
Docket No. 40038.
United States Tax Court
T.C. Memo 1954-243; 1954 Tax Ct. Memo LEXIS 2; 13 T.C.M. (CCH) 1223; T.C.M. (RIA) 54348; December 31, 1954, Filed *2 Petitioner received $5,610 and $2,800 in 1948 and 1949, respectively, from a corporation which hoped to derive a profit from the successful development of various ideas upon which petitioner was working. There was no understanding that petitioner was personally obligated to repay the corporation the amounts received; and the corporation expected to recover the amounts it paid petitioner, if at all, out of the profits. Held, the amounts received by petitioner were ordinary income. Martin J. Torphy, Esq., 231 West Washington Avenue, Milwaukee, Wis., for the petitioners. Richard D. Hobbet, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of *3 petitioners for the years 1948 and 1949 in the amounts of $193 and $1,527.68, respectively, an addition to tax under section 291(a) of the 1939 Code of $48.25 for the year 1948, and additions to tax under section 293(a) of the 1939 Code of $9.65 and $76.38 for the years 1948 and 1949, respectively. The issues for decision are whether respondent correctly determined that the amounts received by Arthur J. Bouchard from the Juneau Stamping & Manufacturing Co. in the years 1948 and 1949 represented ordinary income, and correctly determined additions to tax under sections 291(a) and 293(a) of the 1939 Code. [Findings of fact] Arthur J. Bouchard (hereinafter referred to as petitioner) and Irene S. Bouchard are husband and wife and reside in Wauwatosa, Wisconsin. Neither filed an income tax return for the year 1948. They filed a joint return for the year 1949 with the collector of internal revenue for the district of Wisconsin. In 1947 petitioner approached Carl F. Hofmeier, president of the Juneau Stamping & Manufacturing Co. (hereinafter referred to as Juneau) with an idea for deriving profits from the production and sale of certain items, including a dishwasher, a combination *4 ashtray and glass-holder, a heater cover for Army tanks, and other articles. He also had an idea for realizing profits by acquiring steel for Hotpoint Electric Co. At that time petitioner was without money. Petitioner and Hofmeier entered into an informal agreement as a result of their discussions, but they do not now agree as to its terms. According to petitioner's understanding of the agreement, he was to work on the furtherance of his ideas for deriving profits; Hofmeier or Juneau was to advance petitioner money to cover his living and travel expenses; the initial profits were to be used to reimburse Hofmeier or Juneau for the amounts advanced; aind the remaining profits were to be evenly divided. Neither party understood that petitioner would be personally liable for the repayment of the amounts received. Juneau paid petitioner $5,610 and $2,800 in the years 1948 and 1949, respectively, under the above arrangement which it charged off as an expense for contract work. Respondent stipulated that petitioner was not an employee. Petitioner has not repaid any of the above amounts, and neither petitioner nor Hofmeier are of the opinion that petitioner is obligated to repay Juneau. *5 There is a dispute, however, as to whether Juneau owes petitioner an additional sum. [Opinion] Petitioners are not contending that the amounts received from Juneau were gifts. Cf. . They do contend, however, that the amounts received were loans and not compensation for services. Certainly money received as a loan is not income. . But there is nothing in the record to indicate that the questioned amounts were received as loans. Petitioners have advanced two theories upon which they rest their contention that the payments received were loans. The first is based upon petitioner's understanding that Juneau was to be reimbursed out of the initial profits. But such an arrangement does not give rise to an indebtedness. It is simply a procedure for sharing the profits. Under petitioner's understanding of the agreement, Juneau paid for petitioner's services hoping to recover its expenditures out of the profits. Cf. . Petitioners' second theory is that no understanding was reached as to the terms of the agreement; and, hence, *6 there was no binding contract. They argue that in the absence of a contract there was no consideration and petitioner was legally obligated to repay the amounts received. But assuming, arguendo, that petitioner did become legally obligated to repay the amounts in dispute, it is clear that petitioner did not think he was under such an obligation. Where money is received under these circumstances, the fact that the taxpayer may be legally obligated to repay the amounts received does not prevent them from being taxed as ordinary income. ; ; ; , (on appeal C.A. 6). In , the Supreme Court said: "* * * If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * *7 * *" As we view the facts, petitioner received payments from Juneau because he was or appeared to be performing services as a result of which Juneau hoped to derive a profit. There was no understanding that the money would be repaid, except to the extent Juneau was reimbursed out of profits. While it appears that Hofmeier was anxious to aid the petitioner and his family, who were without money, there is nothing in the record to indicate that the payments were gifts rather than compensation for services. Nor is there any indication that petitioner was restricted in his use of the money received. Under these circumstances the only logical conclusion is that the payments were received for services rendered and are, therefore, taxable as ordinary income. There is some indication in the record that $410 and $600 received by petitioner in 1948 and 1949, respectively, were in the nature of advances for travelling expenses. But such payments are taxable as income when received. . Petitioner is, of course, entitled to deduct allowable expenses which he actually incurred. However, petitioners have not attempted to establish the right to a business *8 expense deduction; and while there is some indication in the record that such expenses were incurred, there is no evidence establishing the year in which they were incurred or the amount, if any, which was expended. Petitioners do not contest respondent's determination of additions to tax of 25 per cent for the year 1948 for failure to file a return and of 5 per cent for each of the years 1948 and 1949 on the ground that at least part of the deficiency was due to negligence, or intentional disregard of rules and regulations but without intent to defraud. While there is some indication in the record that petitioner believed that no part of the amounts received was taxable income, this alone is not sufficient to rebut the respondent's determination. Cf. . Decision will be entered for the respondent.